UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ADALINE WINNINGHAM, individually
and on behalf of all others similarly situated,
*et al.*,

                      Plaintiffs,

    vs.

RAFEAL'S GOURMET DINER, LLC dba
THE NILE, an Oregon Limited Liability
Company; ABDRABARRASOOL M.
BUESSA, an individual; and DOES, 1
through 10, inclusive,

                      Defendants.

Case No. 6:22-cv-00382-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

       Plaintiffs Adaline Winningham and Hannah Thornton bring this putative class action against Defendants, Rafeal's Gourmet Diner, LLC dba The Nile, Abdrabarrasool Buessa, and Does 1 through 10, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

Page 1 — OPINION AND ORDER

201, *et seq.* Compl. ¶ 1, ECF No. 1.[1] Plaintiffs describe the putative class members as "all current and former exotic dancers who worked at The Nile . . . at any time starting (3) years before" Plaintiffs filed the Complaint to the present. *Id.* at ¶ 10. Pursuant to the FLSA, Plaintiffs moved the Court for an order conditionally certifying the matter as a class action and allowing notice of the action to be sent to similarly situated individuals. Pls.' Mot. for Conditional Certification and Issuance of Notice, ECF No. 20 ("Pls.' Mot."). Defendants opposed those motion. Defs.' Response, ECF No. 23. For the following reasons, the Court GRANTS Plaintiffs' motion for conditional certification and DENIES Plaintiffs' proposed notice in its current form.[2]

Plaintiffs also seek equitable tolling of the FLSA's statute of limitations. Pls.' Mot. 13, ECF No. 20. Because the request for equitable tolling is a dispositive motion, it will be addressed in a separate findings and recommendations. *See, e.g., Reddy v. Morrissey*, No. 3:18-cv-00937-YY, 2018 WL 4407248, at *1 n.1 (D. Or. 2018) (citing cases stating such).

---

[1] Originally, Winningham was the sole Plaintiff. Compl., ECF No. 1. Thornton later opted into the action. Notice of Consent, ECF No 18. Counsel withdrew from representing plaintiff Winningham. Motion to Withdraw, ECF No. 19. Thornton is now the lead plaintiff.

[2] There is a general split of authority as to whether granting a motion for conditional certification is a motion that is solely within a magistrate judge's authority. "The weight of authority concludes that granting a motion for conditional certification is a nondispositive matter within a magistrate judge's authority to resolve." *Hollis v. R&R Restaurants, Inc.*, Case No. 3:21-cv-00965-YY, 2022 WL 1303263 at *1 n.1 (D. Or. 2022) (cleaned up); *see also Lescinsky v. Clark Cnty. Sch. Dist.*, 539 F. Supp. 3d 1121, 1125 (D. Nev. 2021) ("The Court agrees with the majority view that granting a motion for conditional certification of a collective action is a nondispositive matter within a magistrate judge's authority."); *Geller v. Bowers*, 2012 WL 1895961, at *1 n.1 (N.D. Cal. Apr. 13, 2012) (noting that because a motion for conditional certification is a preliminary determination, that it may be decided by a magistrate judge); *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 110 n.1 (S.D.N.Y. 2015) ("A United States [M]agistrate Judge has the authority to rule on a motion to authorize a collective action."); *Esparza v. C & J Energy Servs. Inc.*, No. 5:15-CV-850, 2016 WL 1737147, at *1 (W.D. Tex. May 2, 2016) ("A motion for conditional class certification is nondispositive."); *Dimery v. Universal Prot. Serv., LLC*, 2016 WL 7666136, at *1 n.1 (M.D. Fla. Mar. 24, 2016) ("[A] motion for conditional certification under the Fair Labor Standards Act is a non-dispositive matter, and therefore appropriate for a magistrate to decide under 28 U.S.C. § 636(b)(1)(A)."). The court aligns with the "weight of authority" and accordingly issues this decision as an opinion and order.

## FACTUAL ALLEGATIONS

Defendants Buessa and Does 1 through 10 were owners, managers, employees, or agents of The Nile, a club located in Eugene, Oregon. Compl. ¶¶ 10–13, ECF No. 1. Plaintiffs performed at The Nile as adult entertainers. *Id.* at ¶ 3; Thornton Decl. ¶ 2, ECF No. 20-2. The putative class are all current and former dancers who worked at The Nile. Compl. ¶ 10, ECF No. 1. Defendants employed Plaintiffs and all other dancers at The Nile as independent contractors. *Id.* at ¶ 28; Thornton Decl., ¶ 7, ECF No. 20-2.

Defendants did not pay Plaintiffs an hourly wage. Compl. ¶ 34, ECF No. 1; Thornton Decl. ¶ 5, ECF No 20-2. Rather, Plaintiffs earned their income exclusively by tips. Compl. ¶ 43, ECF No. 1; Thornton Decl. ¶ 5, ECF No 20-2. Defendants required Plaintiffs to share tips with Defendants and other non-service employees, including bouncers and disc jockeys. Compl. ¶ 44, ECF No. 1; Thornton Decl. ¶ 5, ECF No. 20-2.

Defendants exercised a great deal of control over Plaintiffs through written and unwritten policies. Compl. ¶ 46, ECF No. 1; Thornton Decl. ¶¶ 8–18, ECF No. 20-2. For Example, Defendants controlled how the dancers worked, when dancers worked, and how much dancers charged. Compl. ¶¶ 34–44, ECF No. 1; Thornton Decl. ¶¶ 8–15, ECF No. 20-2. Defendants could discipline the dancers if they did not complete their shift. Compl. ¶¶ 40 – 41, ECF No. 1; Thornton Decl. ¶ 16, ECF No. 20-2.

Defendants engaged in the common practice of not paying the putative class an hourly wage. Compl. ¶ 34; ECF No. 1; Thornton Decl. ¶ 6, ECF No. 20-2. The putative class had the same job and were under the same pay structure as Plaintiffs. Compl. ¶¶ 59, 63, ECF No. 1. The putative class at The Nile were subject to the same conditions of employment and the same degree of control by Defendants. *Id.* at ¶ 65; Thornton Decl. ¶¶ 8–15, ECF No. 20-2. Defendants

imposed the same fee structure on the putative class. Compl. ¶ 67, ECF No. 1; Thornton Decl. ¶¶ 8–15, ECF No. 20-2.

## DISCUSSION

Plaintiffs allege four violations of the FLSA: failure to pay minimum wages, 29 U.S.C. § 206; illegal kickbacks, 29 C.F.R. § 531.35; unlawful taking of tips, 29 U.S.C. § 203; and forced tip sharing, 29 C.F.R. § 531.35. Plaintiffs now seeks conditional certification and for notice to be sent to similarly situated individuals.

## I. Conditional Certification

### A. Legal Standard

The FLSA provides for a private right of action to enforce its provisions "by any one or more employees [on] behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Neither the FLSA, . . . the Ninth Circuit, nor the Supreme Court has defined the term 'similarly situated.'" *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015). However, a majority of courts have adopted a two-step approach to evaluate whether potential plaintiffs are similarly situated. *Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon*, No. 3:13-CV-00475-PK, 2013 WL 5593040, at *15 (D. Or. Oct. 10, 2013); *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-00960-ST, 2013 WL 1326538, at *3-*4 (D. Or. Apr. 1, 2013); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (concluding that the district court did not err in adopting the two-step approach).

At this juncture, it is only necessary to discuss the first step, which requires the court to make an "initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). This analysis involves "'nothing more than substantial allegations that the putative

class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996)).[3] Accordingly, cases in this district have characterized this inquiry as a "less stringent standard than the requirements for certification under Rule 23" and "typically results in certification." *Dickerson v. Cable Commc'ns, Inc.*, 2013 WL 6178460, at *2 n.5 (D. Or. Nov. 25, 2013); *Margulies*, 2013 WL 5593040, at *15.

### B. Sufficiency of the Allegations to Support Conditional Class Certification

Defendants argue that the allegations are insufficient to show that the putative members are similarly situated on three grounds: (1) the nature of an independent contractor's work; (2) the evidence provided is insufficient; and (3) that the allegations provided are insufficient. The Court addresses those arguments in turn.

#### 1.  Independent Contractors

First, Defendants argue that Plaintiffs have not carried their burden to show that they are similarly situated to other dancers at The Nile. Defs.' Response 3, ECF No. 23. Defendants, relying on *Bamgbose v. Delta-T Grp., Inc.*, 684 F. Supp. 2d 660, 668–69 (E.D. Pa. 2010), assert that "[t]he Court must analyze whether the . . . workers are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors." *Id.* Said in another way, Defendants assert that a court apply the "economic realities

---

[3] The second step of a FLSA class certification, which is not implicated in this motion, typically occurs after the completion of discovery, when defendants often move to decertify the class action. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). At the second step, a court evaluates "several factors, including the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." *Morden v. T-Mobile USA, Inc.*, No. C05-2112 RSM, 2006 WL 2620320, at *2 (W.D. Wash. Sept. 12, 2006) (citing *Thiessen*, 267 F.3d at 1103).

test"[4] in determining whether potential plaintiffs are similarly situated. *Id.* at 4. However, Defendants' reliance on *Bamgbose* is unpersuasive and contrary to the majority of courts in the Ninth Circuit.

In *Bamgbose*, the Court evaluated whether the plaintiffs made a sufficient showing for conditional certification under the FLSA. The Court noted that the parties had already engaged in some discovery related to class certification. *Id.* Thus, the Court evaluated the putative class under stage one. *Id.* ("Because the parties in this action have engaged in discovery related to the class certification issue, the Court will evaluate the putative class under stage one, requiring a modest factual showing that the putative class is similarly situated."). Here, neither party asserts that the parties have participated in discovery regarding class certification. Absent discovery related to class certification, the reasoning of *Bamgbose* is inapplicable here.[5]

---

[4] To evaluate whether a worker is an employee or independent contractor, the Ninth Circuit analyzes the following six factors, the totality of which is referred to as the "economic realities test":
> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon her managerial skill;
> (3) the alleged employee's investment in equipment or materials required for her task, or her employment of helpers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanence of the working relationship; and
> (6) whether the service rendered is an integral part of the alleged employer's business.

*Real v Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Those factors are non-exhaustive. *Id.* at 754 n.14.

[5] Defendants provided an affidavit by defendant Buessa in support of the conclusion that Thornton is an independent Contractor. Decl. Buessa, ECF No. 25. The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification. *See Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir.2001) (explaining that plaintiffs may meet lenient standard "'by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which *successfully engage* defendants' affidavits to the contrary'") (emphasis added). Competing declarations simply create a "he-said-she-said situation"; while "[i]t may be true that the [defendant's] evidence will *later* negate [the plaintiff's]

Regardless of whether the parties have initiated discovery, the majority of courts in the Ninth Circuit have concluded, contrary to *Bamgbose*, that the fact-specific inquiry of independent contractors goes to the merits. Accordingly, the inquiry is more appropriate for the second step of class certification.[6] *Carter v. XPO Last Mile, Inc.*, 2016 WL 5680464 (N.D. Cal. Oct. 3, 2016) ("Whether there are *materially* significant differences is best tested at the 'second step' of the FLSA class certification process."); *Gilbert v. Citigroup, Inc.*, 2009 WL 424320 (N.D. Cal. Feb 18, 2009) ("Defendants' concern about individualized inquiries does not require the Court to deny conditional certification. . . . Under the two-stage certification procedure, Defendants can present this evidence and make these arguments as part of a motion to decertify the class once discovery is complete."); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (declining to evaluate the merits at the conditional certification stage); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (noting that it is only during the second stage analysis that a court reviews "the disparate factual and employment settings of the individual plaintiffs").

The Court agrees with the majority of courts in the Ninth Circuit. The individualized analysis needed to determine whether a party is an independent contractor is a fact-specific

---

claims, that should not bar conditional certification at the first stage." *Escobar v. Whiteside Const. Corp.*, 2008 WL 3915715, at *4 (N.D. Cal. 2008) (emphasis added).

[6] Although Defendants do not make the argument, some courts have concluded that the individualized analysis needed to determine whether a party is an independent contractor or employee for FLSA purposes precludes class certification. *See Demauro v. Limo, Inc.*, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) ("the individualized analysis needed to determine whether each driver is an independent contractor or employee for FLSA purposes precludes class certification."); *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N. D. Ind. 2009) (denying conditional certification because "the court must take into consideration the actual history of the parties' relationship, necessitating an individualized examination of the multiple factors relating to each drivers' employment."). If the reasoning in those cases is the test, no independent contractor misclassification case could be certified under FLSA. The Court is unpersuaded by that reasoning.

inquiry. Full discovery is required to make that fact-specific inquiry. Defendants' argument is better addressed at the second stage of the inquiry.

### 2. Insufficient Evidence

Second, Defendants allege that Plaintiffs have failed to demonstrate that Plaintiffs are "similarly situated with the putative collective." Defs.' Response 8–9, ECF No. 20. Specifically, Defendants argue that Plaintiffs' only evidence demonstrating that they are similarly situated with the putative class is a "two-page, self-serving declaration." *Id.* at 9. However, an individualized inquiry as to whether a plaintiff is similarly situated with the rest of the collective is generally analyzed at the second step of the FLSA collective certification action, not the first. *See Morden v. T—Mobile USA, Inc.*, 2006 WL 2620320, at *2 (W.D. Wash. Sept. 12, 2006) (noting that the second step evaluates "specific employment conditions and duties of the individual plaintiffs").[7]

### 3. Insufficient Allegations

Third, and finally, Defendants assert that Plaintiffs failed to sufficiently allege that the putative class is similarly situated. Defs.' Response 8–11, ECF No. 23. The Court concludes that Plaintiffs met their low burden for conditional certification. Plaintiffs and the putative class comprise of dancers at The Nile. Plaintiffs provide substantial allegations that the putative class suffered from Defendants' policies that mischaracterized dancers as independent contractors. For example, Plaintiffs allege that it was the policy at The Nile to have its dancers paid strictly by

---

[7] Defendants also assert that the evidence provided by Plaintiffs is only speculative. The Court disagrees with that characterization. *See* Compl. 1, ECF No. 1 ("Plaintiff ADALINE WINNINGHAM ('Plaintiff'), individually and on behalf of all others similarly situated, alleges the following upon information and belief, *based upon investigation of counsel, published reports, and personal knowledge*[.]" (emphasis added); *see also* Thornton Decl. ¶ 1, ECF No. 20-2 ("I make this declaration of my own personal knowledge, and if called to testify, I could and would competently testify hereto under oath.").

Page 8 — OPINION AND ORDER

tips. Plaintiff further allege that Defendants required illegal kickbacks, the unlawful taking of tips, and unlawful forced tip sharing. Finally, Plaintiffs allege that Defendants controlled the class through several required policies. Much, if not all, of the evidence will be common among the putative class. In sum, Plaintiffs, and the putative class, allegedly suffered from the same policies, had the same job title, and have common evidence to prove the case. Those allegations are sufficient, at this point, to conditionally certify the matter as a class action.

## II.     Notice

Plaintiffs submitted a proposed "Consent to Joint Collective Action form" to be issued to dancers at The Nile within the last three years. Plaintiffs request that the notice be "mailed, emailed, and texted to all the dancers at The Nile who have been classified as non-employees." Pls.' Mot 12, ECF No. 20. Additionally, Plaintiffs request that the notice be posted in a public location near the public entrance of The Nile as well as the dressing rooms. *Id.* Defendants object requesting "that the Court decline to issue notice as requested by Plaintiff[s]." Defs.' Response 14, ECF No. 14. Defendants' raise issues with (1) the contents, (2) the method of delivery, and (3) the posting locations of the notice. Defs.' Response 14–21, ECF No. 23. Defendants request that the court decline to issue Plaintiffs' notice in its current form and allow the parties to collaborate on neutral accurate language to notify individuals. The Court agrees with Defendants that the parties should confer and agree on language in accordance with this order.

The Supreme Court has abstained from delineating the proposed contents of a § 216(b) notice, noting that "such 'details' should be left to the broad discretion of the trial court." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003) (citing *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). The Court reviews the details of the notice in light of its broad discretion.

**A.     Content of Message**

Defendants object to the notice asserting that it is "improperly suggestive of potential financial gain rather than a matter of legal rights," and that the notice misleadingly states that counsel has been in contact with plaintiff Winningham. Defs.' Response 14–16, ECF No. 23

1.     <u>Improperly Suggestive</u>

Defendants argue that the portion of the notice, which provides: "in order to . . . obtain a portion of any judgment or settlement that may be entered on these claims in the dancers' favor, you must complete and return this consent form" and "[i]f you do not return the enclosed consent form by [DATE]. 2022, you . . . may not be able to receive a share of any settlement or judgment that the plaintiffs may obtain under the federal claims in this case." Pls.' Mot. Ex. 3, ECF No. 20-3 ("Proposed Notice"). Defendants posit that the "focus of the proposed notice should be to alert the performers to contact [Plaintiffs'] counsel should they believe that Defendants have indeed misclassified them as independent contractors." Defs.' Response 14–15, ECF No. 23.

A notice of a putative class action should, at a minimum, provide notice to putative members that "there will not necessarily be a favorable ruling in the case." *Chastain v. Cam*, No. 3:13-cv-01802-SI, 2014 WL 3734368, at *9 (D. Or. July 28, 2014). The sentences that Defendants identify as problematic do not disclose the potential for adverse rulings and should be edited to reflect such a possibility. The Court makes the following edits:

"If you do participate in this case, you will share in the benefits if there is a settlement or judgment, and you will also be bound by any favorable or adverse decisions or rulings in the case."

"If you do not return the enclosed consent form by [DATE], you will not receive any money or other benefits if there is a settlement or judgment, and you will not be covered by any favorable or adverse decisions or rulings in the case."

The parties may change those edits only if the parties confer and mutually agree on different language.

### 2. Misleading

Defendants also object to the portion of the proposed notice, which states: "The plaintiff who initiated this case will work with us to make decisions regarding the progress of litigation[.]" Proposed Notice, ECF No. 20-3. Defendants assert that the proposed notice is misleading in that it insinuates that the plaintiff who initiated the case is in contact and collaboration with the attorneys who prepared and delivered the notice. Defs.' Response 15, ECF No. 23. Defendants support that assertion by Plaintiffs' Notice of Motion to Withdraw (ECF No. 19), which states that the motion to withdraw is based upon the breakdown in communications between Winningham and her counsel.

As a general rule, putative collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170. The notice as written is inaccurate. The motion to withdraw supports Defendants' assertion that plaintiff Winningham's counsel is not in contact with the "plaintiff who initiated the case." The Court makes the following edit:

"The lead plaintiff will work with us to make decisions regarding the progress of litigation."

The parties may change that edits only if the parties confer and mutually agree on different language.

### B.     Method of Notifying Putative Members

Plaintiffs propose that the notice "be mailed, emailed, and texted to all the dancers at The Nile who have been classified as non-employees." Pls.' Mot. 12, ECF No. 20. Additionally, Plaintiffs request that the notice "be posted in a public location near the public entrance of The Nile as well as in the dressing rooms." *Id.* As a preliminary matter, Defendants request that the Court authorize a claims administrator to facilitate the delivery of any notices. Defs.' Response 17, ECF No. 23. Further, Defendants object to the production of telephone numbers, work locations, and copies of driver's licenses and the delivery of notices by text messages. *Id.* 16–18.

#### 1.     Authorized Claims Administrator

Defendants object to allowing counsel for Plaintiffs to disseminate the notice and request that a neutral, authorized claims administrator facilitate the delivery of any notices, so that the putative members do not become targets for spam mail and questionable legal advertising. *Id.* at 17. Defendants provide several cases supporting that proposition. *See, e.g., Wren v. Rgis Inventory Specialists*, 2007 WL 4532218, at *9 (N.D. Cal. Dec. 19, 2007) (allowing information to only be provided to a third-party administrator "to protect the privacy of [ ] employees"). Here, however, the Court concludes that none of the information that Plaintiffs request Defendants to produce for notice rises to the types of privacy concerns necessitating a claims administrator. Although Plaintiffs request information that requires professionalism and due diligence to respect the privacy of the putative class, none of the information is highly private, protected, or confidential in nature. Defendants provide no other basis for the Court to order a

claims administrator other than the general issue of privacy. Instead, Defendants may seek a protective order under Fed. R. Civ. P. 26 to remediate any privacy concerns.

### 2. Telephone Numbers, Work Locations, and Copies of Driver's Licenses

Defendants object to the production of telephone numbers, work locations, and copies of driver's licenses asserting that it is "unduly burdensome and overbroad dissemination of confidential[ ] personal information." Defs.' Response 16, ECF No. 23. As noted above, the Court is unpersuaded by Defendants' privacy concerns. Telephone numbers, work locations, and copies of driver's licenses are typical matters for discovery. A protective order would mitigate Defendants' privacy concerns. Defendants provide no other basis to support that production of the information will be unduly burdensome or overbroad except for the privacy concerns. The Court concludes that the production of telephone numbers, work locations, and copies of driver's licenses is not unduly burdensome or overbroad.

### 3. Text Messages

Plaintiffs request that the notice be mailed, emailed, and texted to the putative class. Pls.' Mot. 12, ECF No. 20. Defendants object to the notice being texted to the putative class. Defs.' Response 17, ECF No. 23. Defendants contend that there are potential monetary costs for individuals who may not have a phone plan and that there are privacy concerns. *Id.* Again, the Court does not find that the privacy concerns are at issue. However, the issue of monetary costs to the putative class remains. Defendants and Plaintiffs each provide several cases in which a court disallows or allows text messaging to be used to notify the putative class. *See, e.g., Miller v. JAH LLC*, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) ("[T]he court has serious reservations about sanctioning text messages as a way to reach the potential class . . . some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges."); *but see, e.g., Syed v. M-1, L.L.C.*, 2014 WL 6685966, at *8 (E.D. Cal.

Page 13 — OPINION AND ORDER

Nov. 26, 2014) (allows for U.S. mail, email, and text messages to be used to notify the putative class). The Supreme Court has held that employees need to receive "timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. Text messages are an efficient, if not the most efficient, method of notification and will ensure that notice is timely sent. The Court weighs the necessity of timely notice with the monetary impact that text messaging may have on the putative class. The Court concludes that Plaintiffs may notify the potential plaintiffs by text messages. However, the Court limits the amount of text messages Plaintiffs may send for the purposes of notification to five text messages per putative class member. Furthermore, included in those text messages, Plaintiffs must include a method to opt-out of receiving further text messages.

      **C.**    **Locations for Posting**

Plaintiffs request that the notice be "posted in a public location near the public entrance of The Nile." Pls.' Mot 12, ECF No. 20. Plaintiffs also request that the notice be posted on Defendants' "social media accounts and in [The Nile's] dressing rooms . . . adjacent to the entrance door for any dancer." *Id.* at 13. Defendants object to the notice being posted on their website, social media accounts, or in any area viewable to the general public because it is prejudicial, unnecessary, and unduly burdensome. Defs.' Response, 19, ECF No. 23.

Generally speaking, "posting or publication are appropriate methods for providing notice when individual methods of service are unsuccessful or likely to be inadequate." *Pittman v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 10693400, at *10 (D. Nev. Sept. 1, 2009). Plaintiffs assert that there is a "concern that Defendants will either retaliate against dancers for choosing to opt-in or make deliberate efforts to prevent them from learning about the

case." Pls.' Reply 11, ECF No. 28.[8] But Plaintiffs fail to demonstrate how publishing information about the putative class action on social media or at a public entrance would facilitate notice any more than the targeted U.S. mail, email, or text messaging, which the Court approved above. If, for example, Plaintiffs hope to reach dancers who no longer work at the club, there is no indication that information posted at The Nile—whether outside a club entrance or inside a dressing room—would increase that probability.

Requiring notice on Defendants social media and posted in public places also has the potential to be prejudicial. Posting in public spaces may "give the impression that the as-yet unproven allegations against Defendants are true." *Pittman*, 2009 WL 10693400, at *10 (citing *Owen v. W. Travel, Inc.*, No. C03-0659Z, 2003 WL 25961848, at *10 (W.D. Wash. Dec. 12, 2003)). The Court concludes that posting outside Defendants' business and on their social media would unfairly prejudice Defendants and would not serve the purpose of notifying the putative class.

The Court does, however, recognize the potential benefit of posting notice of this action in the dancers' dressing rooms. That private location balances Plaintiffs' aim to reach as many potential members as possible with the business's desire to be free from unfair prejudice during the pendency of this action. However, it is unnecessary and excessive to require that Defendants post a notice "at least 3 by 5 feet, in bright colors." Pls. Mot. 12, ECF No. 20. Instead, in each dressing room, Defendants shall post notice of the collective action in accordance with the

---

[8] Contrary to Plaintiffs' assertion that there is a concern that Defendants will retaliate against the dancers, Plaintiffs' proposed notice states that "The Nile has given its assurances that you will not be subject to retaliation of any kind by choosing to participate in this case, and you will not be discharged or subject to discrimination in any manner if you chose to exercise your rights under the FLSA." Proposed Notice 1, ECF No. 20-3.

Page 15 — OPINION AND ORDER

FLSA's guidelines surrounding copies of federal and state-mandated workplace posters. Those requirements are:

> Reproductions or facsimiles of such Federal or State posters shall constitute compliance with the posting requirements of section 8(c)(1) of the Act where such reproductions or facsimiles are at least 8½ inches by 14 inches, and the printing size is at least 10 pt. Whenever the size of the poster increases, the size of the print shall also increase accordingly. The caption or heading on the poster shall be in large type, generally not less than 36 pt.

29 C.F.R. § 1903.2(a)(3).

### D. Notice Period

Plaintiffs seek a 90-day period for potential members to opt into the putative class action. Pls.' Mot. 13, ECF No. 20. Defendants argue that a 60-day period "is more appropriate and is regularly approved," but they do not elaborate further on their request. Defs.' Response, ECF No. 23. In setting the length of an opt-in period, the court must balance both "the goal of avoiding a multiplicity of duplicative suits" and "setting cutoff dates to expedite disposition of the action." *Hoffmann-La*, 493 U.S. at 172.

Plaintiffs note that a longer period is reasonable given the size of the collective and because of the high turnover with the putative class. Pls.' Mot., ECF No. 20. The Court concludes that a 90-day notice period, only 30 days longer than Defendants' request, would not raise issues with duplicative suits and there would remain a cutoff date to expedite dispositions of the action. At the same time, a longer opt-in period of 90 days would better facilitate the ability of the potential plaintiffs to receive notice and join the putative class action. Thus, Plaintiffs' request for a 90-day opt-in period is granted.

## CONCLUSION

For the reasons discussed above, the court GRANTS in part[9] Plaintiffs' motion for conditional certification (ECF No. 20). The court DENIES the implementation of Plaintiffs' proposed notice (ECF 23-3) and instead directs the parties to confer and finalize a notice and proposed order that is (1) in accordance with this opinion and (2) distributed by a mutually agreed-upon third-party claims administrator. The request for oral arguments is denied as unnecessary.

DATED this 19th day of December 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge

---

[9] As previously noted, the request for equitable tolling, which is non-dispositive, will be addressed in separate findings and recommendations.